May it please the Court, Your Honors, Leslie Abrego appearing on behalf of the appellant, Mr. Eddie Joseph-Othoman. The essential crux of this case, and I'm just going to summarize it, is that there is an issue regarding the objectiveness of the evidence which was provided in immigration court regarding Mr. Othoman's asylum claim and the withholding of removal. Now, the issue is that the immigration judge's order, as it was recited, indicates that although she found Mr. Othoman credible, and therefore the subjective part of the examination for the asylum claim purposes was met, she could not find an objective, reasonable basis in the asylum claim. However, her order fails to indicate or establish the basis in which the asylum application essentially was not founded. For example, I thought it was as a result of his failure to meet his burden of proof to show past persecution. That's what she's claiming. And basically, the court failed to, I believe the court confused the well-founded fear of persecution standard for withholding of removal claim with the basis that's required for an asylum application, which is less stringent. So, for example. Is it that, or is it just a simple failure of proof because the evidence is just so inconclusive? And it's not anybody's, it's not his fault. It's just that he testified to what he saw and what happened, but the fact finder listened to that testimony and said, I can't tell from what he's able to tell me that it was persecution. I think even if the, if that were true, that there was sufficient evidence in front of the court to make a determination on the less stringent standard to at least grant the asylum application, if not find the withholding of removal as that is a more stringent standard. Well, let's take the given that he has the credibility. He has a finding in his favor on credibility. So what we're really looking at is whether he's a crime victim or whether he's a member of a protected group under the statute. Not, and we see literally, it's true in this circuit, we see thousands of cases of crime victims who get over here and tell a really good, dramatic story that's believable and it establishes beyond any doubt that they're a crime victim, but it doesn't establish at all that they're a member of a protected class. And in this case, the case got here partly because there was an argument that he was, his family was a victim of persecution by the sort of terrorist group at that time in his country. But that would be entirely up to speculation, wouldn't it, on this record as to whether his family was a target of terrorism by the UNITA party in Angola? I think that there are two cases, which were not cited in our brief, which are relevant to this case, which I'm going to analogize. And those two cases are the Yazikian case and the second case is the Borja case, B-O-R-J-A. Do you have a supplemental memo? I don't, Your Honor. And I'm just bringing, I'm raising those cases because you can look at circumstances or events independently and just say, well, they're just acts of violence or random occurrences that just happened. But in this circuit, the court looks at the What is the underlying issue in this case that makes whatever happened to his family a political or religious or ethnicity persecution rather than a crime? Well, the two linking unrelated events, which causes someone to believe that maybe there's more than a mere coincidence here, is the fact that, one, the appellant's father was driving a government-marked vehicle, working in the course and scope of his duties, and was stopped by a opposing political group and was killed by that group when he was stopped. Later, in the same day, the appellant goes home, finds his family missing, and the house ransacked. I mean, I don't believe that it's What is the group, what do we see as the motive for this that would make it a political or some religious or some other kind of persecution? Well, the motive in this case, as was cited even in the opposing brief, is that appellant's father was employed by the government in Angola for several years, and having been identified as a person who worked for the government, when approached by opposing parties, even if there was a peace treaty in place, would still cause a divergent political view between the UNITA organization and the government that was in place at the time. In this case, unfortunately Well, so the only, that there's no indication that there had been prior threats as a result of this or of this working for the government? I understand what you're looking for. No, I'm just trying to see how, given the standard that we have, the argument that you can infer from these circumstances that there was a political motivation is a good argument to the immigration judge and the BIA, I suppose, but we're under pretty strict scrutiny here that we have to be able to say that the evidence compels that you draw that conclusion. I don't see how you make that. Again, I want to reiterate the fact that an asylum claim, the basis for the objective test is less stringent than that of a withholding of removal claim, in that you can have less than a 50% chance that you will be persecuted in the future in an asylum claim, whereas Well, this is true, but you still have to, you're trying to say that this was persecution in the past on the basis of political affiliation, and he was driving a truck full of food and they took the truck, killed him and took the truck. Correct. And the question is, is that, does that compel the inference that this was a political killing or is that, or is it equally or almost as equally easy to infer that this is a robbery? Again, I don't, I think based on the circumstantial evidence that was presented to the immigration court, there has to be some kind of logical link between the murder and the disappearance of his family and the ransacking of the house. There has to be some kind of connection because if there wasn't any connection, it would just be too weird to happen all in one day, that people would be kidnapped, disappeared, never to be heard from again, and someone's father being murdered right before them. I think that it's illogical for us not to draw a chain there between the occurrence of those two events. So your argument is that that inference is compelled by virtue of the timing. Yes. Okay. If you want to save a minute for rebuttal, you may, because I will. Thank you, Your Honor. May it please the Court, my name is Anthony W. Norwood, I'm here representing the respondent. I want to thank the Court for accommodating my schedule this morning. If I can go to the last point, Your Honors, there's no, it took him a day and a half to get home and there's no evidence of what happened to his family. The only conflict in the evidence that the immigration judge found was whether the house was ransacked or not. He did find him to be credible, but noted that one conflict. He never heard from any member of his family again? He never heard from any member of his family. He has never attempted to find any member of his family. In the record, he stayed for 30 minutes, he found some money, and according to his story, he went from Bangola all the way across Namibia and ended up in Durban, South Africa. As the Court found, as the Court mentioned in all of its questions, the petitioner did not establish that he fears persecution on account of one of the protected families. When did this happen? This happened in 19, this happened in December of 1995. He made it to the United States in 1997, I believe, and was arrested and detained when he crossed the border in Tijuana. He jumped a ship, he says he jumped a ship in Durban, South Africa, and came to Mexico and then crossed Mexico and then walked across the border. So he was detained when he walked across the border in 1997. Went out, this case, one of the reasons this case is so old is that he had temporary protected status for early part of the 200s or the 2000s, the 21st century, he had TPS status. He was protected by the Attorney General from returning to Angola, and the case was reopened only when the State Department and the Department of Justice agreed that temporary protected status for people from Angola was no longer required. Petitioner mentioned the judge's decision. The judge's decision is clear. He said, unfortunately, the nature of the circumstances under which his father was killed does not provide sufficient objective evidence in the court's mind to substantiate a finding of a well-founded fear of persecution on the basis of one of the five. But that just goes to the, that just goes to the killing of the father, doesn't it? No, Your Honor, I believe the immigration judge... But you just read it, I thought. I think that's a totality of, that's a summation of what the immigration judge is finding. He's talking about the killing of the father and the return home to the house. We don't know what happened. It's just speculation what happened to his family, and it's unfortunate speculation. It could have been somewhere else. There's just no objective evidence of what happened to the family. The petitioner himself testified that he thought the reason that his father, that they took the, that they stopped the truck and took the truck was to get the food. And he also testified that he thought the reason his father was killed was because he had seen them and he was a witness to the perpetrators. Petitioner did not establish persecution or a fear of harm on account of one of these protected grounds, and the evidence does not compel a contrary conclusion. If there are no further questions, I submit it. Thank you. Briefly, Your Honors, I'd like to remind the Court that at the time of these circumstances with the appellant's family, he was 16 years old at the time. So is it reasonable for him, at 16 years old, to inquire with local law enforcement that his one father was shot and face the people who shot him or face being shot himself and killed? And also to report the missing disappearance of his family after coming home, finding them not there, and the house ransacked? I don't think, I think that. Why is that? Why wouldn't he go to the police? The IJ said that the town was controlled by the government. His father worked for the government. Why wouldn't he? I think that ultimately, as the Court is well aware in any criminal case, the victim would have to actually face the accused parties. And I think that in this kind of an area in the world where you have to face your, you know, the accused, do you want to subject yourself to possibly being killed in the future after witnessing your father being shot? I mean, I think the answer is no. Is that what he said? Did he testify to that? I don't recall. I'm sorry. And again, just the final point that with that information, there, again, there is a less than 50% chance of future persecution is all that the Court had to address in terms of his asylum application. Thank you. You said you had a couple of cases that might be helpful to your case. Yes. Can you give those to the deputy clerk? I will. Thank you. Thank you. The case just argued is submitted. That concludes the Court's calendar for this morning, and the Court stands adjourned.
judges: Goodwin, Schroeder, Tallman